CHARLES BUSH, BY CHARLES BUSH, HIS GUARDIAN
AD *LITEM*, CHARLES BUSH, INDIVIDUALLY, AND
DORIS BUSH, PLAINTIFFS-APPELLANTS, v. NEW JER-
SEY & NEW YORK TRANSIT CO., INC., INTER-CITY
TRANSPORTATION CO., INC., DEFENDANTS-RESPOND-
ENTS, AND STANLEY J. MALORGIO, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued November 17, 1958—Decided November 21, 1958.

Before Judges GOLDMANN, FREUND and HANEMAN.

*Mr. Harry Chashin* argued the cause for appellants (*Messrs. Marcus & Levy,* attorneys).

*Mr. Archibald Kreiger* argued the cause for defendants-respondents.

The opinion of the court was delivered by

GOLDMANN, S. J. A. D. Plaintiffs appeal from a Superior Court, Law Division, judgment in favor of the corporate defendants entered on a jury verdict of no cause of action. The infant plaintiff, by his guardian *ad litem,* and his parents had instituted suit to recover damages for personal injuries sustained by the child arising out of a collision between him as a pedestrian and the bus owned by Inter-City Transportation Co., Inc., and operated by N. J. & N. Y. Transit Co., Inc. (through its driver Malorgio), on a claim of negligent operation. Defendants' answer denied negligence and interposed the defense of contributory negligence because it appeared that as the bus was passing through the street intersection the infant, while crossing the street, had run into the left rear of the vehicle.

Plaintiffs took a voluntary dismissal as to Malorgio. After the verdict of no cause of action, plaintiffs moved for a new

trial on the ground of error in the court's charge. The motion was denied. The same claim of error is now presented as the sole ground of appeal, namely, whether the issue of contributory negligence of the infant, who was 4 years 1 month and 19 days old at the time of the accident, should have been submitted to the jury.

The Bush family lived in Paterson, one block from the intersection of Main and Mary Streets, the scene of the accident and a well-traveled thoroughfare. At mid-morning of the day in question Mrs. Bush, the mother, had let her son Charles, the infant plaintiff, and his three-year-old sister Virginia, out to play in front of the house and to ride their tricycles. Shortly afterwards she went outside to see what the children were doing, and discovered they were gone. She ran down to the corner of Main and Mary Streets and found Virginia and the two tricycles on the southwest corner. Charles was lying in the middle of Main Street, his head toward the westerly curb and his feet out toward the street. The bus was standing nearby.

The evidence was that the bus had been traveling in a southerly direction on Main Street, toward its intersection with Mary Street, at a speed of 10–12 miles per hour. There was a traffic signal at the corner. About a block from the intersection the bus driver slowed down for the red signal, and as it turned green he proceeded through the light at the same rate of speed. Just as he passed the green light he looked in his rear-view mirror and saw a boy bounce off the left rear of the bus. He stopped immediately. The driver had not seen any child prior to the incident.

Although there were telephone company employees working in an open manhole nearby and other persons in the vicinity, there was no eye witness to the accident, and no evidence as to the circumstances under which the infant was present in the highway. From the fact that the boy had left his tricycle standing on the southwest corner and the testimony that a clean brushmark was found on the outer rim of the left rear tire of the bus, it is a reasonable inference that the infant had for some reason crossed Main Street

and was returning to the place where he had left his younger sister when he ran into the left rear of the bus. It may be that he was attracted to the schoolyard on the other side of Main Street, or perhaps to the manhole where the men were working.

As to the individual qualities of the infant he was, as noted, almost four years two months old, attended Sunday School and occasionally church, and was enrolled in public school some seven months after the accident. The oldest of four children, he was permitted by his mother to play outside with his tricycle, and with his younger sister in his charge. The physician who treated him for fractures of the leg and collarbone testified that he was "a remarkably quiet and good patient. * * * He had no complaints. He laid there and let anything be done and there wasn't a word out of him. He is a remarkable child in that respect."

At the end of the entire case there was no motion by plaintiffs to strike the defense of contributory negligence. Nor did they move that the trial judge determine as a matter of law that the infant was incapable of contributory negligence and that this issue be removed from the case. Plaintiffs submitted no request to charge that the jury should disregard the defense of contributory negligence. The trial judge gave the case to the jury on the issues raised, and charged on the existing law in New Jersey with respect to contributory negligence of infants. It was only after the charge was given that plaintiffs objected for the first time that the issue of contributory negligence should not have been submitted, but withheld from the jury as a matter of law because of the infant's age. No claim was made, nor is any now presented, that the legal rule charged was erroneous.

 Plaintiffs concede that "it has been sufficiently decided for this time and in our State that an infant of four may have the capacity for contributory negligence"—in short, age *per se* creates no presumption of capacity or incapacity. *Dillman v. Mitchell,* 13 *N. J.* 412 (1953);

*Hellstern v. Smelowitz,* 17 *N. J. Super.* 366 (*App. Div.* 1952); and consult *Annotations,* 107 *A. L. R.* 4 (1937); 174 *A. L. R.* 1080 (1948). They argue, however, that there was no evidence showing the experience and capacity of the child to understand and avoid the risks and dangers to which he was exposed as a pedestrian on a main city thoroughfare; that the presumption of incapacity remained because of age alone, and the charge was therefore erroneous because this presumption had not been rebutted. They contend that the trial court as a matter of law should have on its own motion determined that the existing law of contributory negligence of an infant had no application in the circumstances of the case, so that it fell into error in submitting the issue to the jury in its charge. We do not agree.

The law which governs this case was exhaustively examined by this court in the *Hellstern* case. In *Dillman* our Supreme Court declared that it was in entire accord with what we said there. The capacity of an infant to understand and avoid dangers to which it is exposed in a given situation depends not so much upon his age as upon his psychological development. *Hellstern v. Smelowitz, above,* 17 *N. J. Super.* at *page* 377. As was said in *Dillman:*

"* * * The age of a child does not alone determine its capacity to care for itself and avoid dangers, and the law should not arbitrarily fix an age at which the duty to exercise some care begins. If reasonable men might differ as to the capabilities of an infant to understand, appreciate and avoid dangers to which he is exposed, then whether or not he was guilty of contributory negligence in the circumstances becomes a jury question. * * * Most children of tender years have some grasp of any situation; the lurking dangers in some situations are obvious to them. * * * A child may be so young as to be incapable of negligence as a matter of law, but the age comes when it is a question of fact, although there be a presumption of continuing [in]capacity." (13 *N. J.* at *pages* 415–416)

The rule, as declared in *Hellstern,* is that in order to determine whether a child old enough to be capable of negligence has been guilty of contributory negligence, "it is necessary to take into consideration the age of the child,

its experience and capacity to understand and avoid dangers to which it is exposed in the actual circumstances and situation under investigation." And where "fairminded men might honestly differ as to whether the child failed to exercise the requisite degree of care stated"—such as is usually exercised by persons of similar age, judgment and experience —"having also in mind all of the other essential elements of contributory negligence, the question, where in issue, should be submitted to the jury with appropriate instructions from the court." 17 *N. J. Super.* at *pages* 378–379. To the same effect, see *Prosser on Torts* (*2d ed.* 1955), § 31, *pp.* 127–128; *Restatement, Torts,* § 283, *pp.* 743–744 (1934); 5A *Am. Jur., Automobiles and Highway Traffic,* § 777, *p.* 729 (1956); *Harry Shulman, "The Standard of Care Required of Children,"* 37 *Yale L. J.* 618 (1927); *Altieri v. D'Onofrio,* 21 *Conn. Sup.* 1, 140 *A. 2d* 887 (*Super. Ct.* 1958).

█ Contrary to plaintiffs' suggestion, there was other evidence in the case on the issue of capacity, aside from the age of the boy. His mother permitted him to go outside unattended with his tricycle, and she apparently considered that he could be trusted to look after himself and to care for his younger sister. The boy attended Sunday School, and seven months later was enrolled in public school. The doctor described him as a remarkable child, quiet and cooperative when treated for his injuries. We are informed the child was in court throughout the trial and so could be seen by the judge and jury. There was enough here to determine whether the child was capable of being contributorily negligent, on all the variables of age, experience, training and capacity.

█ We need hardly say that contributory negligence is usually a fact question unless it conclusively appears that reasonable men might not differ on the facts or inferences to be drawn therefrom.

The judgment is affirmed.